# UNITED STATES v. UNITED AIRCRAFT CORPORATION.

## Civil Action No. 2183.

District Court, D. Connecticut.

May 22, 1948.

Adrian W. Maher, U. S. Atty., of New Haven, Conn., and Edward J. Lonergan, Asst. U. S. Atty., of Hartford, Conn., for plaintiff.

George H. Day and Shipman & Goodwin, all of Hartford, Conn., for defendant.

SMITH, District Judge.

In March, 1946, the Hoosier Air Freight Corporation executed two purchase money chattel mortgages to War Assets Corporation on two twin-engine Douglas aircraft. Each mortgage was in the amount of $17,000. These mortgages were recorded with the Department of Commerce, Civil Aeronautics Administration. There they were indexed by the Civil Aeronautics Administration aircraft number and by the manufacturer's serial number for the airplane. As part of its equipment one aircraft had a Pratt & Whitney engine, Model R 1830–92, Engine Number CP–354390, and the other had an engine of the same model with the number CP–351247.

In July of 1946, the Hoosier Air Freight Corporation removed these engines from the aircraft and shipped them to the Pratt & Whitney Division of United Aircraft Corporation for a complete major overhaul. In the course of overhauling these two engines, United Aircraft expended a sum of $10,658.36 for labor and materials. For this it claims an artificer's lien and, pursuant to such claim of lien, has retained possession of the engines at all times and refused to surrender possession.

On April 16, 1947, a petition was filed against Air-Borne Cargo Lines (formerly Hoosier Air Freight Corporation) for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On August 1, 1947, the corporation was adjudicated bankrupt. On or about August 19, 1947, the referee in bankruptcy authorized the foreclosure of the chattel mortgages and the sale of the chattels covered by the mortgages without prejudice to the rights of those asserting artisan's or possessory liens. The aircraft were then sold without the engines which are the subject of this controversy. The plaintiff received $7,000 for one of the aircraft and $8,500 for the other.

After demand for the engines, the United States has brought this action to replevy the engines from defendant United Aircraft Corporation, asserting that the lien of its chattel mortgage is superior to that of the defendant. Defendant contends that such an issue may not be tried by replevin but that the controversy must be litigated by foreclosure and sale. However, Section 911h of the 1945 Supplement to the Connecticut General Statutes is permissive. "The mortgagee * * * *may* bring a complaint claiming the sale of the mortgaged property * * *." Nor do we think that the Court's intention in Windsor Trust Co. v. Champigny et al., 1927, 105 Conn. 615, 622, 136 A. 556, was to overrule Pease v. Odenkirchen, 1875, 42 Conn. 415, where the Court permitted a mortgagee to bring a replevin action against a mortgagor's vendee.

It cannot be said that, with respect to a mortgage of personal property, the parties may not, by contract, extend the remedies of the mortgagee to other than those expressly provided in the statute in view of the permissive language of the

statute. Therefore, plaintiff may utilize a replevin action in this proceeding.

Defendant contends that the description of the engines is not sufficiently definite to be binding as against persons other than the mortgagor.

The Congress has preempted the field of conveyancing of interests in aircraft and portions thereof, to facilitate the control and promotion of air commerce. The power to do so may not be denied.

We, therefore, now have a Federal law governing the validity of such conveyances. The statute, by its recordation requirement, voids as to third parties, without actual notice, conveyances not recorded. The principles of fraudulent conveyance of personalty without transfer of possession are to be applied except so far as notice to third persons has been given in accordance with the terms of the Federal statute.

The question here is whether the conveyances recorded in this case adequately furnish such notice.

Here we have conveyances which purport to affect the title to aircraft and also to portions thereof, the engines, which are easily removable and interchangeable, and often in practice so removed and interchanged. The Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., in section 523(b), does not attempt to define the particularity with which the aircraft or portions thereof shall be described. The particularity of description intended must, therefore, be such particularity as would be reasonably sufficient for notice to third parties whose rights against the transferees of title without delivery of possession are to be cut off by the recording under the statute. Among those third parties will obviously be engine overhaulers.

Obviously, too, the description used in the mortgages in suit is totally lacking in particularity sufficient to warn such artificers of the inclusion of these particular engines in the claimed mortgage lien. In view of the removability and interchangeablity of engines, a mortgage description to cover them should sufficiently identify them so that recourse to the records would reveal their inclusion in the conveyance.

An airplane engine in itself is a saleable article. It may be easily removed from an aircraft just as a machine tool may be removed from its position in a factory. In fact, in view of the requirement of proper maintenance in Paragraph 9 of the mortgage, and the fact that major overhaul is a periodic requisite of aircraft engines, it was contemplated by the parties that such removals would occur at periodic intervals. Since the only description in the mortgage of the engine is in a definition of aircraft as including "all parts, engines, equipment and accessories * * ," it is not sufficiently definite to give notice of the lien of the mortgage on the engines to third parties.

We have been unable to find any interpretation of the statute so far as the sufficiency of notice to third persons dealing with aircraft engines is concerned. The case of In re Veterans' Air Express Company, Inc., D.C.N.J., 76 F.Supp. 684, relied upon by the government, had to do with third persons dealing with the entire aircraft and there would appear to be no difficulty as to the sufficiency of notice since both manufacturer's number and the Civil Aeronautics Board number were known to the third person and the conveyance to the government for security was indexed under both those numbers. Nor is the old "Federal common law" prior to Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, of any great assistance. There is, perhaps, discernable some trend toward holding conveyances for security without transfer of possession not fraudulent, since the retention of possession was not necessarily inconsistent with the granting of limited title for security purposes disclosed in the instrument. See note, Volume 1, Smith's Leading Cases 44 (1847) and cases cited. However, the Civil Aeronautics Act recognizes that such transfer should be considered invalid as to third persons unless notice is given by the recording of the instrument. Here the instrument itself lacks a sufficiency of description of the engines to meet any standard of fair notice to third persons dealing

with the engines under the circumstances in which engines are used and maintained.

As an alternative ground, defendand contends that under Connecticut law the artificer's lien prevails over the mortgage. Insofar as defendant's position is predicated on the proposition that the difficulties occasioned by the recordation of conditional sales of automobiles (New Britain Real Estate & Title Co. v. Collington, 1925, 102 Conn. 652, 129 A. 780), are analogous to the case at bar, the position is not well taken. True it is that an airplane is even more mobile than an automobile but the extent of that mobility must be considered against the scope of the recording system which covers the object mortgaged. The recording system for aircraft covers the entire United States. The defendant was aware of the fact that the engines belonged to a corporation of one of the United States and that, if there were any mortgage on the engines, it must necessarily be recorded in the files of the Civil Aeronautics Administration.

Nor can the defendant in this situation prevail on any analogy to admiralty cases (Cf. The Lulu, 10 Wall. 192, 19 L.Ed. 906; The Sultana, 19 How. 359, 15 L.Ed. 660), for it cannot be said that any repairs such as these were immediately necessary because of an unexpected emergency.

However, it may well have been the intent of the contracting parties to the mortgage that an artisan's lien should have priority over the rights of the mortgagee. Paragraphs 5, 10 and 14c of the mortgage could be taken to contemplate such an eventuality. On the other hand, some other type of lien originating under a different circumstance may have been within the contemplation of the parties when these provisions were incorporated in the mortgage. In any event, in view of the determination that the description of the engines was not adequate, this point need not be decided. Nor need we determine whether the practical deficiency in notice due to the failure to index conveyances as required by section 523(d) (2) by the names of the parties is in itself sufficient to defeat the mortgage as to third parties.

We do not reach the question whether an artificer's lien can take precedence over a valid government lien, by way of mortgage, since the government lien on the engines is invalid as to third parties. Moreover, the case cited by the plaintiff, United States v. Cardinale Warehousing Corporation et al., 1946, D.C., 65 F.Supp. 760, would not be in point if the question of priority were before us. In that case there was no question but that the full title to the goods was in the United States. Liens on government property might well cripple the United States in carrying out its sovereign functions. No such danger is apparent in applying to the United States, as the holder of security for a debt, the same rules as to validity and priority of security as are applied to any citizen.

Therefore, in a situation such as this, an artificer's lien may take precedence over a government lien invalid as to third parties. Since the mortgage did not contain a sufficiently definite description of the engines to constitute a valid mortgage as to third persons, the defendant's lien prevails and the replevin action is dismissed.