No. 37,780

JACK MARSHALL, *Appellant*, v. (L. F. BARDIN and JOSEPH SLAGER, doing business as Central Airpart Company and Central Airparts, Inc., Defendants) RAY ANDERSON (Interpleader), *Appellee.*

(220 P. 2d 187)

Opinion on rehearing filed July 8, 1950.
(For original opinion see *Marshall v. Anderson,* 169 Kan. 41, 216 P. 2d 812.)

*Burr S. Stottle,* of Kansas City Mo., argued the cause, and *Donald C. Little,* of Kansas City, was with him on the briefs for the appellant.

*Claude L. Rice,* of Kansas City, argued the cause, and *Mary Jane Keller,* of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The original opinion is reported in 169 Kan. 41, 216 P. 2d 812. The parties, the nature of the action, the pleadings, findings of fact made and the judgment of the trial court are all set forth in the original opinion and are made a part hereof without restatement.

A few preliminary statements, however, may be helpful. The appellant Marshall filed his original action December 4, 1947, and had the instant airplane attached as the property of L. F. Bardin and Joseph Slager, partners doing business as Central Airpart Company. On January 4, 1949, appellant made Central Airparts, Inc., an Ohio corporation, an additional party defendant and had a second attachment issued on that date. Appellant admits the latter defendant, the corporation, and not the partnership was and is the registered title owner of the airplane. It follows appellant reached nothing as a result of the first attachment. Approximately eight months before the second attachment issued against the corporation the intervenor, Anderson, filed a verified amended interplea. (For interplea see original opinion.) Neither the defendant partnership nor the corporation made an appearance in the case. The action was tried solely on issues joined by the appellant, an attaching creditor, who sought to satisfy his claim against the defendant corporation for repairs made *on other airplanes* and appellee, the intervenor, who claimed to have acquired title to the instant airplane under an oral agreement with the defendant corporation that intervenor could have the plane if he would pay a claim for labor performed and materials furnished in the repair of the instant airplane by a Mississippi concern, the owner corporation believing the repair bill was highly exorbitant.

On the testimony adduced on the trial the court found the allegations contained in intervenor's interplea were true. The trial court also expressly found the intervenor was the owner and in possession of the airplane on the dates of both attachments.

On his motion for rehearing appellant reiterates his contention there was *no evidence* he had actual notice of intervenor's claim of title prior to the attachments. Touching the factual issues we previously said:

"The parties argue about where the burden of proof rested. That is not very material in this case now. Much depended on what witnesses the trial judge believed and on what weight he attached to their testimony. If he believed appellee's witnesses, and an examination of the record indicates he must have, this court cannot say the proof was insufficient to sustain the findings made." (p. 44.)

We also might have said the district court, in order to reach its decision, could have placed little, if any, credence on material portions of evidence adduced by and on behalf of appellant. What credence the trial court should have given the testimony was a matter which rested in its province, a field we do not invade. We, therefore, adhere to our former opinion with respect to the facts.

Appellant leans heavily on *Penrose v. Cooper,* 88 Kan. 210, 128 Pac. 362, and other similar cases in which there was no substantial conflict in material portions of the evidence and in which only a question of law on the undisputed evidence was involved. Such cases are not in point. Here the material evidence was highly conflicting. In rendering our former decision we believed the court's findings settled the issues in this case and so stated. Appellant thought otherwise.

Our real purpose in granting a rehearing was to permit the parties to give us additional assistance, if possible, relative to the question whether actual notice to appellant, an attaching creditor, of intervenor's claim of title prior to the attachments enabled appellant to obtain possession of the attached airplane free and clear of intervenor's interest, under the provision of the Civil Aeronautics Act. 49 U. S. C. A. § 523 (c) (Pocket part) provides:

"No conveyance the recording of which is provided for by subsection (a) (1) of this section made on or after August 22, 1938, and no instrument the recording of which is provided for by subsection (a) (2) of this section or subsection (a) (3) of this section made on or after June 19, 1948, shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, *or any person having actual notice thereof,* until such conveyance or other instrument is filed for recordation in the office of the Administrator. For the purposes of this subsection, such conveyance or other instrument shall take effect from the time and date of its filing for recordation, and not from the time and date of its execution." (Our italics.)

Appellant relies on the following cases decided since the Civil Aeronautics Act became effective: *Wilson v. Barnes*, 359 Mo. 352, 221 S. W. 2d 731; *In re Veterans' Air Express Co.*, 76 F. Supp. 684; *United States v. United Aircraft Corporation*, 80 F. Supp. 52; *Blalock v. Brown*, 78 Ga. App. 537, 51 S. E. 2d 610, and on prior decisions rendered under R. S. 1873, § 4192, now 46 U. S. C. A. § 921, of the Federal Ship Mortgage Act. Cases under that act relied on by appellant are: *Hitchings v. Olsen*, 184 Fed. 305; *Secrist v. The German Ins. Co.*, 19 Ohio St. 476; *Dize v. Beacham*, 81 Md. 603, 32 A. 243.

Appellee contends none of the cases cited by appellant is controlling under the particular facts of this case. He admits he has found none squarely in point under the Civil Aeronautics Act but contends the question has been determined under the Federal Ship Mortgage Act. The parties concede it has been held the provision of the statute here involved is almost identical under the two acts. (*Blalock v. Brown*, supra, p. 615.) Appellee relies on *Bank v. Williams*, 94 La. 418; *Hobbs, et al. v. Interchange*, 1 W. Va. 57; *Moore v. Simonds*, 100 U. S. 145, 25 L. ed. 590.

Appellee also relies on the established doctrine an attaching creditor acquires no greater right in the property seized than the defendant debtor in the attachment owned. (*Julian v. Oil Co.*, 83 Kan. 440, 111 Pac. 445; *Federal Trust Co. v. Ireland*, 132 Kan. 615, 296 Pac. 704; *Howard v. Howard*, 149 Kan. 223, 86 P. 2d 510.)

Appellant rests his case primarily on the factual basis he had no actual notice of intervenor's claim of title prior to the attachments and the purported sale to intervenor was void. If the factual basis on which appellant rests his case were in his favor the cases he cites would be in point. Unfortunately for him, as previously stated, there was evidence he had actual notice of intervenor's claim of title prior to both attachments. As previously indicated, however, the last attachment is the only one of any consequence now.

Appellant argues the trial court did not find he had actual notice of intervenor's claim prior to the attachments. We think the findings of the court that the allegations of the interplea were true and that intervenor was the owner in possession of the airplane at the time of the attachments covered that issue.

A careful examination of the cases cited by the parties and our own research has disclosed no case squarely in point. A review of the cases cited, in our opinion, does disclose it was the intent and

purpose of the Congress in enacting the Civil Aeronautics Act to require the recording of conveyances affecting title to airplanes as directed in the act in order to protect persons who have dealt on the faith of the recorded title. We have found no better statement of the purpose of the recording provision than is contained in the early case of *Bank v. Williams,* supra, where it was said concerning the Federal Ship Mortgage Act:

"On the other hand, we are referred to sundry decisions, Federal and State, which strongly intimate that the object and effect of the statute are simply *to protect persons who have dealt on the faith of the recorded title, and as to whom it would be a fraud to give effect to unrecorded titles to their detriment."* (Our italics.) (p. 422.)

It is well to bear in mind appellant was not a purchaser of this aircraft for value on the strength of the record title. He had acquired no mortgage or other lien on the aircraft in question. The indebtedness of the defendant corporation did not arise out of any dealings appellant had with it in connection with work on this particular airplane. The failure of intervenor to have his title recorded did not defraud or mislead appellant in his dealings with the defendant corporation out of which its debt to appellant arose. That debt arose out of work appellant had done on other planes of the defendant corporation. Appellant merely had an attachment levied on this airplane which he might have procured on a truck, automobile, office furniture or any other property of the defendant corporation subject to attachment for the purpose of satisfying the unpaid claim he had against it.

It is true the defendant corporation did not deliver its bill of sale to intervenor. All his pilot obtained when he delivered intervenor's cashier's check to the concern in Mississippi which had done work on this particular plane were the papers disclosing the plane was properly registered in the name of the defendant corporation. It is true that not having received a bill of sale from the defendant corporation the sale was not actually completed. Intervenor, however, had paid the claim against the airplane and had it in his possession until it was first attached approximately a month and a half later. There was an implied contract upon the part of the defendant corporation to deliver to intervenor a good record title as required by the Civil Aeronautics Act. (*Parsons Company v. Hall,* 319 Mich. 240, 244, 29 N. W. 2d 676.) Of course, until intervenor received a bill of sale he could not record it. Intervenor could not lawfully operate the aircraft until a conveyance was delivered to him and

was registered in his name. (*In re Veterans' Air Express Co.*, supra, p. 686; *Parsons Company v. Hall*, supra, p. 245.) To say that intervenor, under these circumstances, is to be deprived of his rights in the aircraft to an attaching creditor does not seem fair or logical. Nor does it appear to us to be in harmony with the intent and purpose of the Civil Aeronautics Act.

Manifestly the defendant corporation, appellant's debtor, could not have acquired possession of the airplane from intervenor without at least first reimbursing him for the $3,057.53 he had paid to discharge the defendant corporation's debt for repairs on the plane, a debt which otherwise would have ripened into a perfected lien. Appellant's rights as an attachment creditor were not superior to those of the defendant corporation, appellant's debtor. In *Bank v. Williams*, supra, involving the Federal Ship Mortgage Act it was said:

"It is claimed, however, that, as attaching creditors, they have acquired rights superior to those of their debtor, and can maintain his title though he himself could not.

"This is contrary to the general principles of attachment, which gives to the attaching creditor no higher or better right than his debtor had to the property attached. [Citations.]

" 'It takes effect only on such interest as the debtor has in the property at the time of the levy, and does not *per se* affect the title at all.' 1st Am. Encyc. of Law, p. 930." (p. 422.)

In *Julian v. Oil Co.*, supra, this court said:

"An attachment creditor acquires no greater right in the property seized than the defendant in the attachment owned. (*N. W. Forwarding Co. v. Mahaffey, Slutz, & Co.*, 36 Kan. 152; *Bank v. Fleming*, 63 Kan. 139. See, also, *Johnson v. Brant*, 38 Kan. 754.) The attachment bound the interest of the defendant only, whether that interest was shown by the record or not. The attaching creditor is not a purchaser for value buying upon the strength of a record title. (*Markley v. Investment Co.*, 67 Kan. 535.)" (p. 440, 441.)

To the same effect are *Federal Trust Co. v. Ireland*, supra, and *Howard v. Howard*, supra. This principle is in harmony with the general doctrine.

In 5 Am. Jur., Attachment and Garnishment, § 820, it is said:

"The general rule is that an attachment or garnishment is binding upon the attached or garnished property to the extent of the defendant's interest in the same, but not to any greater extent. Consequently, it does not generally have the full effect of a bona fide assignment for value. An attaching or garnishing creditor does not stand in the position of a bona fide purchaser for value, and the attachment lien does not displace prior equities or rights, but is subject to all equities to which the property was liable in the debtor's hands,

and therefore, if a debtor has done any act or entered into any agreement which precludes him from asserting an equity that he once had, his creditor will likewise be precluded. It is the duty of the courts to protect every equity belonging to other persons."

Even though the defendant corporation delivered no bill of sale to intervernor the equitable title, as between those parties, vested in intervenor. Under such circumstances appellant, as an attaching creditor, could not oppose the equitable title which was valid against his debtor. (*Bank v. Williams*, supra, a decision under the Federal Ship Mortgage Act.) See, also, *Hobbs, et al. v. Interchange*, supra, and *Moore v. Simonds*, supra.

We think the judgment must be affirmed. The original opinion is adhered to.